UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| ARIANA WYATT, et al. | CIV NO. 23-00065 LEK-KJM |
| Plaintiffs, | |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**ORDER DENYING PLAINTIFFS' OBJECTION TO [DKT. 138]
MAGISTRATE JUDGE'S ORDER DENYING EMERGENCY MOTION TO EXTEND
THE SCHEDULE; AND ADOPTING THE MAGISTRATE JUDGE'S ORDER
DENYING PLAINTIFFS' EMERGENCY MOTION TO EXTEND THE SCHEDULE**

On August 7, 2025, Plaintiffs Ariana Wyatt,

individually, and as next friend to her minor child, I.W., and

Meredith Wilson ("Plaintiffs") filed their Emergency Motion to

Extend the Schedule ("8/7 Motion"), seeking to extend all

deadlines after an expert witness experienced an emergency.

[Dkt. no. 125.] On August 26, 2025, the magistrate judge filed

the Order Denying Plaintiffs' Emergency Motion to Extend the

Schedule ("8/26/25 Order"). [Dkt. no. 138.] Plaintiffs filed a

motion for reconsideration of the 8/26/25 Order on August 29,

2025 ("Motion for Reconsideration"). [Dkt. no. 139.]

On October 29, 2025, the magistrate judge issued an

order denying the Motion for Reconsideration ("10/29/25 Order").

[Dkt. no. 164.] On November 12, 2025, Plaintiffs filed an

objection asking the Court to set aside the 8/26/25 Order and grant the requested extension or limited relief ("Objection"). [Dkt. no. 166.] On November 26, 2025, Defendant United States of America ("United States") filed a response opposing the Objection ("Opposition"). [Dkt. no. 170.]

The Court considers the Objection as a non-hearing matter pursuant to Rule LR7.1(d) of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules"). The Objection is denied and the 8/26/25 Order is adopted for the reasons set forth below.

**BACKGROUND**

This Order incorporates the background from the 10/29/25 Order and supplements it as necessary. Plaintiffs commenced this action by filing a Complaint on February 2, 2023.[1] [Dkt. no. 1.] Under the original scheduling order, filed on May 8, 2023, Plaintiffs were required to make disclosures regarding expert witnesses no later than March 4, 2024. [Dkt. no. 33 at ¶ 3.a.] Plaintiffs' expert disclosures deadline was extended five times.[2] The operative scheduling order is the May 21, 2025 Stipulated Sixth Amended Rule 16 Scheduling Order,

---

[1] The operative pleading in this case is the Amended Complaint filed on August 8, 2023. [Dkt. no. 44.]

[2] The five stipulated amended scheduling orders that extended the parties' expert disclosures deadlines, can be found at docket numbers 66, 68, 95, 101, and 110.

which stated that Plaintiffs' expert disclosures deadline was
August 15, 2025. [Dkt. no. 110 at 3.]

Following the 2021 release of jet fuel at the Red Hill
Bulk Fuel Storage Facility ("Red Hill"), over 7,300 plaintiffs
filed tort actions against the United States in this district
court pursuant to the Federal Tort Claims Act ("FTCA"). The
instant case is one such action. See 10/29/25 Order at 2. On
June 6, 2024, the United States filed an omnibus Motion to Stay
Depositions across six related FTCA actions, including the
instant action ("6/6/24 Motion"). [Dkt. no. 72.] Out of the six
related actions, Plaintiffs were the only group of plaintiffs to
oppose the 6/6/24 Motion. [Id. at 1.] In their response in
opposition to the 6/6/24 Motion, filed on June 20, 2024,
Plaintiffs argued that if the depositions were stayed, their
ability to present expert opinions would be stymied for months.
[Dkt. no. 77 at 4.] On July 17, 2024, the magistrate judge
issued an order granting the 6/6/24 Motion ("7/17/24 Order").
[Dkt. no. 85.] The 7/17/24 Order noted that the parties were
"continuing to advance their cases with written discovery," and
stated that the parties "may continue to work with and prepare
their experts." [7/17/24 Order at 7.] As of the filing of the
7/17/24 Order, Plaintiffs' deadline to disclose their experts
was October 4, 2024. See Stipulated Third Amended Rule 16
Scheduling Order, filed 5/15/24 (dkt. no. 68), at 3.

3

On August 29, 2024, a notice concerning a motion to continue the stay of depositions until October 15, 2024 was filed in the instant case. See Notice of Motion to Continue Stay of Depositions, filed 8/29/24 (dkt. no. 88). Plaintiffs filed a statement on September 5, 2024 indicating that they did not oppose that motion pursuant to an agreement made between Plaintiffs and the United States to extend deadlines. [Dkt. no. 93.] That same day, the magistrate judge filed an entering order extending the stay. [Dkt. no. 94.] The Stipulated Fourth Amended Rule 16 Scheduling Order was filed on September 11, 2024, which extended Plaintiffs' expert disclosures deadline from October 4, 2024 to April 18, 2025. [Dkt. no. 95 at 3.] The stay of depositions lasted 90 days. Between the Stipulated Third Amended Rule 16 Scheduling Order and the Stipulated Fourth Amended Rule 16 Scheduling Order, Plaintiffs' expert disclosures deadline was extended by 196 days.

Plaintiffs began consulting with Gerry D. Beckett, C.Hg. ("Beckett"), a hydrogeologist, in June 2024. [10/29/25 Order at 4, 8 (citations omitted).] However, Beckett did not accept a testifying role until early May 2025, as he was awaiting clearance from the Hawai`i State Department of Health ("DOH") regarding his ability to serve as an expert in the instant case due to his work as a subject-matter expert on Red Hill issues for the State of Hawai`i. [Id. at 9 (citations

4

omitted).] Plaintiffs also worked with an unnamed hydrogeologist
between April 28, 2025, and May 1, 2025. [Id. at 14 (citation
omitted).] Further, "Plaintiffs' counsel had ongoing
conversations with two other hydrogeologists," between "the
inception of this litigation" and "as recently as April 2025."
[Id. at 13-14 (quotation marks and citation omitted).]

        In July 2025, Plaintiffs indicated an intent to seek a
schedule extension on at least two occasions prior to learning
of Beckett's medical condition. [8/26/25 Order at 7 (citation
omitted).] First, on July 11, 2025, Plaintiffs' counsel sent
counsel for the United States an email, which expressed
Plaintiffs' intent to request that the magistrate judge extend
the schedule to align the parties' fact discovery cutoff with
the fact discovery cutoff of the related FTCA cases. See
10/29/25 Order at 16 (citation omitted). Second, on July 21,
2025, Plaintiffs requested that the United States agree to a
forty-five-day extension of all deadlines. See id. (citation
omitted). Counsel for the United States responded that they
opposed the request to extend Plaintiffs' expert disclosures
deadlines. [Id. (citations omitted).]

        On July 25, 2025 — four days after the second
extension request — Plaintiffs allegedly became aware of
Beckett's medical issues. [Id. at 16-17 (citations omitted).]
That evening, Plaintiffs' counsel emailed the United States's

counsel and requested that the United States stipulate to a six-month extension of expert discovery deadlines due to Beckett's health concerns. See Opposition to Plaintiffs' Emergency Motion to Extend the Schedule (ECF No. 125), filed 8/13/25 (dkt. no. 131), Declaration of Eric A. Ray ("Ray Decl.") at ¶ 19. Counsel for the United States responded on July 28, 2025, with a request to meet and confer. [Id. at ¶ 20.] On August 1, 2025, Plaintiffs offered to meet and confer on August 7, 2025. [Id. at ¶ 21.] After conferring on August 7, 2025, Plaintiffs elected to file the 8/7 Motion. See 10/29/25 Order at 4.

On August 26, 2025, the magistrate judge denied the 8/7 Motion, finding that Plaintiffs did not satisfy the good cause standard under Federal Rule of Civil Procedure 16(b)(4) because they did not act diligently in retaining and disclosing Beckett as an expert by the August 15, 2025 deadline. See 8/26/25 Order at 6-7, 10. Plaintiffs' motion for reconsideration was denied in the 10/29/25 Order. See generally 10/29/25 Order. In the 10/29/25 Order, the magistrate judge found that the 8/26/25 Order was not based on manifest errors of fact, [id. at 7-10,] was not manifestly unjust, [id. at 10-13,] and was supported by the record, [id. at 13-19].

## STANDARD

### I.   Review of a Magistrate Judge's Order

The Ninth Circuit Court of Appeals has stated:

> [Title 28 United States Code] Section 636(b)(1)
> and its procedural counterpart, Federal Rule of
> Civil Procedure 72, create a distinction between
> "non-dispositive" pretrial motions that may be
> referred to a magistrate judge for a decision and
> "case-dispositive motions" that "may be referred
> only for evidentiary hearing, proposed findings,
> and recommendations" to the district court unless
> the parties agree otherwise. Flam v. Flam, 788
> F.3d 1043, 1046 (9th Cir. 2015) (quoting United
> States v. Reyna-Tapia, 328 F.3d 1114, 1118 (9th
> Cir. 2003) (en banc)). When a magistrate judge
> rules on a non-dispositive matter, a district
> judge may "reconsider" that ruling only if it is
> "clearly erroneous or contrary to law." 28 U.S.C.
> § 636(b)(1)(A); accord Fed. R. Civ. P. 72(a). But
> when a magistrate judge issues a report and
> recommendation on a dispositive matter, a
> district judge must "make a de novo determination
> of those portions of the report or specified
> proposed findings or recommendations to which
> objection is made." Id. § 636(b)(1)(C); see also
> Fed. R. Civ. P. 72(b)(3).

CPC Pat. Techs. Pty Ltd. v. Apple, Inc., 34 F.4th 801, 803–04

(9th Cir. 2022) (footnote omitted).

Nondispositive matters are those "pretrial matter[s]

not dispositive of a party's claim or defense . . . ." Fed. R.

Civ. P. 72(a). "Under [Ninth Circuit] caselaw, to determine

whether a magistrate judge's ruling denying a motion is

dispositive, [the Ninth Circuit] examine[s] whether the denial

of the motion effectively disposes of a claim or defense or

precludes the ultimate relief sought." Bastidas v. Chappell, 791

F.3d 1155, 1164 (9th Cir. 2015) (citations omitted).

> The Ninth Circuit has explained, "Pretrial orders
> of a magistrate [judge] under 636(b)(1)(A) are
> reviewable under the 'clearly erroneous and

7

> contrary to law' standard; they are not subject
> to de novo determination. The reviewing court may
> not simply substitute its judgment for that of
> the deciding court." <u>Grimes v. City & Cty. of San
> Francisco</u>, 951 F.2d 236, 241 (9th Cir. 1991)
> (quotation marks and citations omitted). Instead,
> the court must defer to the nondispositive order
> by a magistrate judge unless it is "clearly
> erroneous or contrary to law."

<u>Ehart v. Lahaina Divers Inc.</u>, CIVIL NO. 21-00475 SOM-KJM, 2024

WL 1018363, at *1 (D. Hawai`i Mar. 8, 2024) (alteration in

<u>Ehart</u>).

> Where the magistrate judge's order,
> findings, and/or recommendations involve a
> dispositive matter, however, the Court must
> review de novo those portions to which objections
> are made and "may accept, reject, or modify, in
> whole or in part, the findings or recommendations
> made by the magistrate judge." 28 U.S.C.
> § 636(b)(1)(C); <u>see also</u> Local Rule 74.2; Fed. R.
> Civ. P. 72(b). Under a de novo standard, the
> Court reviews "the matter anew, the same as if it
> had not been heard before, and as if no decision
> previously had been rendered." <u>Freeman v.
> DirecTV, Inc.</u>, 457 F.3d 1001, 1004 (9th Cir.
> 2006).

<u>Batiste v. Sun Kona Fin. I, LLC</u>, Civ. No. 15-00397 ACK-KSC, 2016

WL 756556, at *4 (D. Hawai`i Feb. 26, 2016).

## II.  <u>Rule 16(b)(4)</u>

Federal Rule of Civil Procedure 16(b)(4) applies to

the modification of deadlines to disclose expert witnesses:

> Rule 26 of the Federal Rule of Civil
> Procedure requires a party to disclose the
> identity of any expert witness it may use at
> trial. Fed. R. Civ. P. 26(a)(2)(A). "A party must
> make [its expert] disclosures at the times and in
> the sequence that the court orders." Fed. R. Civ.

8

> P. 26(a)(2)(D). . . . Under Rule 16(b)(4) of the
> Federal Rules of Civil Procedure, [a] scheduling
> order deadline "may be modified only for good
> cause and with the judge's consent." "The
> pretrial schedule may be modified if it cannot
> reasonably be met despite the diligence of the
> party seeking the extension. If the party seeking
> the modification was not diligent, the inquiry
> should end and the motion to modify should not be
> granted." Zivkovic v. S. Cal. Edison Co., 302
> F.3d 1080, 1087 (9th Cir. 2002) (citations and
> quotation marks omitted).

DW Aina Le`a Dev., LLC v. Land Use Comm'n, Civil NO. 17-00113

SOM-WRP, 2023 WL 8237056, at *1 (D. Hawai`i Nov. 27, 2023) (some

alterations in DW Aina Le`a).[3] "The party seeking to modify a

scheduling order bears the burden of demonstrating good cause."

Lusk v. Five Guys Enters. LLC, Case No. 1:17-cv-00762-AWI-EPG,

2022 WL 5264265, at *3 (E.D. Cal. Sept. 12, 2022) (citing

Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th

Cir. 1992)). "Although the existence or degree of prejudice to

the party opposing the modification might supply additional

reasons to deny a motion, the focus of the inquiry is upon the

moving party's reasons for seeking modification." Johnson, 975

F.2d at 609 (citation omitted).

---

[3] The district court's judgment and several orders that were
appealed in DW Aina Le`a were affirmed by the Ninth Circuit. See
No. 24-1223, No. 24-1549, 2025 WL 546356 (9th Cir. Feb. 19,
2025).

## DISCUSSION

### I.    Standard of Review

The parties disagree on the legal standard that the Court should apply. Plaintiffs argue that the Ninth Circuit's "'functional approach'" for reviewing a magistrate judge's orders renders the 8/26/25 Order dispositive. See Objection, Mem. of Law at 5 (quoting CPC Pat. Techs. Pty Ltd. v. Apple, Inc., 34 F.4th 801, 807 (9th Cir. 2022)). They contend that the 8/26/25 Order precludes them from being able to introduce expert testimony at trial, which, in their view, effectively vitiates their ability to prove their claims. See id. The 8/26/25 Order, however, did not actually or effectively adjudicate Plaintiffs' claims. Rather, the 8/26/25 Order denied Plaintiffs' request for the modification of the scheduling order. Plaintiffs can still prosecute their claims by introducing other evidence, relying on any final findings of fact and conclusions of law in the related FTCA cases, cf. 10/29/25 Order at 11 & n.2, and litigating the case through other means. The 8/26/25 Order should be reviewed under the clearly erroneous standard applicable to nondispositive orders. However, the Court notes that it would reach the same conclusion if it reviewed the 10/29/25 Order as a dispositive order under the de novo standard.

## II.  __Plaintiffs Fail to Establish Good Cause__

### A.  __Plaintiffs' Lack of Diligence__

Plaintiffs assert that the magistrate judge applied a harsher standard than Rule 16(b)(4)'s good cause standard. See Objection, Mem. of Law at 7. This argument lacks merit: the magistrate judge did not demand that Plaintiffs exercise "perfection," [id. at 7, 11,] when retaining and disclosing an expert. See generally 8/26/25 Order. Further, the Court finds that the magistrate judge's reasoning in the 8/26/25 Order (and the 10/29/25 Order) satisfies the good cause standard because the magistrate judge's finding that Plaintiffs were not reasonably diligent is supported by the record.

It is not disputed that Plaintiffs knew since the commencement of this action that expert testimony would be important. See 10/29/25 Order at 13 (stating that Plaintiffs' counsel conversed with at least two other experts "'[s]ince the inception of this litigation, including during and immediately after the stay was lifted in October 2024 and as recently as April 2025 . . . .'" (quoting ECF No. 139-1 (Motion for Reconsideration, Mem. in Supp.) at 7)). It is also not disputed that Plaintiffs began consulting with Beckett in June 2024. See 8/26/25 Order at 4 (citation omitted). Beckett's work with DOH allowed him to become familiar with the hydrogeology of Red Hill. See 8/26/25 Order at 5 (citation omitted).

11

The decision to formally retain Beckett a few months before the August 15, 2025 deadline was made pursuant to the discretion and experience of Plaintiffs' counsel. Plaintiffs could have chosen a testifying expert with less Red Hill experience but with a wider timeframe to prepare his or her report, especially given the voluminous record at issue. See Objection, Mem. of Law at 8-9 (describing the factual record as spanning over eight million pages). Instead, Plaintiffs selected a testifying expert with Red Hill experience but with an obvious risk: that DOH would either refuse to permit him to serve as Plaintiffs' expert or that the permission would be granted too near the expert disclosures deadline such that compliance with Federal Rule of Civil Procedure 26(a)(2)(B) would have been impossible. Plaintiffs could have avoided this risk by selecting another expert or could have hedged this risk by requesting a modification of the expert disclosures deadline the moment that Beckett was retained. Plaintiffs did neither.

The record demonstrates that Plaintiffs appreciated the importance of expert testimony since this litigation began. See 10/29/25 Order at 13. Thus, the timing of Beckett's retention is more accurately characterized as a strategic error stemming from a lack of diligence. It is uncontroverted that Plaintiffs asked the United States for an extension of Plaintiffs' expert disclosures deadline on two separate

12

occasions shortly before they filed the 8/7 Motion. See 8/26/25 Order at 7-8; 10/29/25 Order at 16. Given these requests, it appears that time ran out for Beckett to prepare his report. Plaintiffs were not diligent in waiting over two years to retain and disclose an expert. See Buenviaje v. Wal-Mart Assocs., Inc., Case No. 23-cv-1938-W-MMP, 2024 WL 4584583, at *5 (S.D. Cal. Oct. 25, 2024) (concluding that the plaintiff was not diligent after he missed an expert designation deadline despite acknowledging the importance of expert testimony since the inception of his case); Crews v. Domino's Pizza Corp., Case No. CV 08-03703 GAF (SSx), 2009 WL 10672774, at *2 (C.D. Cal. Aug. 26, 2009) (finding that an expert's retention several months before expert disclosures were required cut against the plaintiffs' assertion that they acted diligently in disclosing their expert witnesses).

**B.    <u>Impact of Deposition Stay</u>**

Plaintiffs contend that the magistrate judge overlooked the stay's impact on Plaintiffs' ability to retain experts. See Objection, Mem. of Law at 7-8. A review of the 10/29/25 Order refutes this contention. See 10/29/25 Order at 7-10, 14-15 (discussing the stay of depositions and its impact on the issue of Plaintiffs' diligence or lack thereof). The Court's appraisal of the facts, however, leads the Court to conclude that the 8/26/25 Order was not based on manifest errors of fact.

The 7/17/24 Order made clear that all parties, including Plaintiffs, could "continue to work with and prepare their experts." [7/17/24 Order at 7.] While Plaintiffs may have needed to wait for the stay to be lifted to fully complete expert reports, nothing in the 7/17/24 Order prevented Plaintiffs' experts from beginning to draft expert reports. Further, the 7/17/24 Order did not forbid Plaintiffs from engaging, retaining, and preparing their experts. See id. For instance, any expert have been able to review other types of discovery during the deposition stay.[4] See id. (making clear that "the stay is limited to depositions" and that "[t]he parties are

_____

[4] In a footnote, Plaintiffs assert that 8,094,912 pages of documents were produced after the deposition stay was lifted. [Objection, Mem. of Law at 9 n.1.] Plaintiffs do not address the fact that their experts could have reviewed at least 6,867,090 pages of documents during the deposition stay. See id. (comparing **beginning** Bates numbers 06867091 of November 2024 production with **ending** Bates numbers 14962003 of July 2025 production). By comparing beginning Bates numbers with ending Bates numbers, Plaintiffs also do not address the fact that they had in their possession 14,749,057 pages of documents to review as of November 15, 2024. See id., Declaration of Counsel ("Segawa Decl."), Exh. 1 (November 15, 2024 production letter from the United States' counsel to Plaintiffs' counsel). Although the United States produced documents on July 11, 2025, [Segawa Decl., Exh. 2 (July 11, 2025 production letter from the United States' counsel to Plaintiffs' counsel),] Plaintiffs possessed almost all of the United States' responsive documents as of November 15, 2024. The Court is not convinced that seventy-eight pages of documents produced on July 11, 2025 prevented Plaintiffs from meeting their expert disclosures deadline. See id. (noting the Bates range of Production Volume 73 as 14961925 through 14962003).

continuing to advance their cases with written discovery").
Further, Beckett served as a subject-matter expert for DOH
during the stay and was unable to accept a testifying role in
this case until an unspecified date in May 2025. [8/26/25 Order
at 4-6.] The Court concludes that the deposition stay did not
result in Plaintiffs' expert disclosures deadline becoming a
deadline that "[could not] reasonably be met despite the
diligence of the party seeking the extension." See Fed. R. Civ.
P. 16(b) advisory committee's note to 1983 amendment.

C.    **The "Backup Expert"**

        Plaintiffs argue that the magistrate judge imposed a
standard that departed from the Rule 16 "reasonable diligence
standard" by suggesting they should have retained a "backup
expert" to guard against medical emergencies. See Objection,
Mem. of Law at 12. Plaintiffs misstate the standard: Rule 16(b)
imposes a good cause standard; not a "reasonable diligence"
standard. See Johnson, 975 F.2d at 609-10 (delineating the good
cause standard). In any event, the magistrate judge did not
mandate redundant experts. Rather, the magistrate judge found
that a diligent party would not have waited until the final
months of the expert disclosures period to formalize the
retention of a testifying expert in a complex case, thereby
leaving no margin for error or unforeseen events. See 8/26/25
Order at 6-7; see also 10/29/25 Order at 19.

15

D.    **Facts Not in Evidence**

Plaintiffs object that the magistrate judge "improperly assumed facts not in the record." See Objection, Mem. of Law at 13. Specifically, Plaintiffs argue the magistrate judge wrongly inferred that they were idle during the period between June 2024 and May 2025 and faulted Plaintiffs for failing to clarify facts in areas that magistrate judge identified as unclear but that "could have been resolved during a hearing or supplemental briefing." [Id.] This argument fails for two primary reasons.

First, Plaintiffs misapprehend the burden of proof under Rule 16(b)(4). It is the movant's burden to demonstrate good cause to modify a scheduling order. Lusk, 2022 WL 5264265, at *3 (citing Johnson, 975 F.2d at 609). The magistrate judge was under no obligation to solicit "Unheard Answer[s]," [Objection, Mem. of Law at 13-14,] regarding Plaintiffs' diligence; rather, it was Plaintiffs' obligation to provide a complete record supporting their request in the first instance. The magistrate judge's observation that the record lacked information regarding Plaintiffs' efforts was a comment on the sufficiency of Plaintiffs' showing, not an assumption of negative facts. Second, the answers to questions that Plaintiffs claim were improperly unsolicited do not alter the outcome of the diligence analysis. Even accepting as true the four "Unheard

16

Answer[s]" proffered by Plaintiffs,[5] the dispositive fact remains

that Plaintiffs unreasonably delayed retaining a testifying

---

[5] The following are the four answers Plaintiffs allege were improperly unsolicited by the magistrate judge:

- Whether Plaintiffs knew of any preexisting medical conditions of their hydrogeologist before learning of the medical emergency in July 2025. ECF #138 at 5.

  o Unheard Answer: Plaintiffs had no knowledge.

- Whether Plaintiffs were working with their hydrogeologist between June 2024 and May 2025. Id. at 7.

  o Unheard Answer: Yes.

- Whether Plaintiffs could have retained an alternative expert who could have completed the work earlier. Id.

  o Unheard Answer: Plaintiffs did work with other experts, but **no other expert** could have completed the work before necessary precedent fact discovery was complete, and Mr. Beckett was uniquely equipped to meet the Court's deadline.

- Whether Plaintiffs diligently obtained other experts. Id. at 8.

  o Unheard Answer: Yes.

- Why Plaintiffs' other experts' opinions were materially influenced by their hydrogeologists' calculations. Id.

  o Unheard Answer: Plaintiffs' other experts are relying on Mr. Beckett to provide testimony about the concentration and duration of exposure.

[Objection, Mem. of Law at 13-14 (emphasis in Mem. of Law).]

expert. This decision falls short of the diligence required to satisfy the good cause standard.

Having reviewed the record anew, the Court adopts the magistrate judge's finding that Plaintiffs did not meet the good cause standard. Because Plaintiffs failed to establish diligence, the magistrate judge was required to deny the request to modify Plaintiffs' expert disclosures deadline. See Johnson, 975 F.2d at 609.

## III. **Plaintiffs' Remaining Arguments**

Plaintiffs argue that the 8/26/25 Order violated Federal Rule of Civil Procedure 1, [Objection, Mem. of Law at 14-17,] and that the magistrate judge's refusal to provide any extension was unduly harsh, [id. at 17-18]. Both arguments are moot: once the Court adopts the finding that Plaintiffs were not diligent, the analysis ends. See Johnson, 975 F.2d at 609.

Even if the Court considered Plaintiffs' alternative arguments, they would not require a different result. Plaintiffs' reliance on Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253 (9th Cir. 2010), for the proposition that the Federal Rules of Civil Procedure should be construed to favor merits-based resolutions is unpersuasive in this context. See Objection, Mem. of Law at 15. While Rule 1 states a foundational principle, the Ninth Circuit has clarified that a court's authority to enforce scheduling orders is essential to its

ability to control its docket. See Johnson, 975 F.2d at 610.
Plaintiffs fail to cite — and the Court has not found — any
controlling authority that invokes Rule 1 to excuse a
demonstrated lack of diligence under Rule 16(b)(4).

        Plaintiffs' reliance on cases discussing harmless,
late disclosures is misplaced. See Objection, Mem. of Law at 15-
16. "Although the existence or degree of prejudice to the party
opposing the modification might supply additional reasons to
deny a motion, the focus of the inquiry is upon the moving
party's reasons for seeking modification." Johnson, 975 F.2d at
609 (citation omitted). In other words, in the Rule 16(b)(4)
context, prejudice or harm to the non-moving party is relevant
only if there is a finding of diligence by the moving party.
None of Plaintiffs' harmless disclosures cases involved a
judicial finding that the moving party lacked diligence when
disclosing its experts. That alone distinguishes these cases.
Additionally, while the district court in Western Towboat Co. v.
Vigor Marine, LLC, No. C20-0416-RSM, 2021 WL 2156694 (W.D. Wash.
May 27, 2021), found that the moving party acted "naively," id.
at *2, the record here reflects a lack of diligence – not
naivete. [Objection, Mem. of Law at (citing W. Towboat).]

        Finally, Plaintiffs' argument that the magistrate
judge should have considered narrower relief pursuant to Pineda
v. City & County of San Francisco, 280 F.R.D. 517 (N.D. Cal.

2012), is unavailing. [Objection, Mem. in Law at 17-18.] Pineda
addressed a motion to exclude experts under Federal Rule of
Civil Procedure 37(c)(1) for deficient disclosures, rather than
a motion to modify a scheduling order under Rule 16(b)(4). See
Pineda, 280 F.R.D. at 520. This distinction is dispositive. In
Pineda, the district court's analysis focused on whether the
plaintiffs' failure was "substantially justified" or "harmless"
under Rule 37. See id. at 520-22. In the instant matter,
Plaintiffs must satisfy Rule 16(b)(4)'s "good cause" standard,
which hinges on diligence. Because Plaintiffs were not diligent,
see supra Discussion Section II.A., the Court need not reach the
Rule 37 harmlessness analysis applied in Pineda.

       The 8/26/25 Order did not deprive Plaintiffs of the
ability to prosecute their case. The 8/26/25 Order denied
Plaintiffs' request to extend the schedule for a sixth time. The
effect of the 8/26/25 Order may make it more difficult for
Plaintiffs to prove their case, but the cause of that effect was
Plaintiffs' lack of diligence.

**CONCLUSION**

       On the basis of the foregoing, Plaintiffs' Renewed
Objection to [Dkt. 138] Magistrate Judge's Order Denying
Emergency Motion to Extend the Schedule, filed November 12,
2025, is DENIED. The Order Denying Plaintiffs' Emergency Motion
to Extend the Schedule, filed August 26, 2025, is ADOPTED.

20

```
IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 5, 2026.
```



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge

**ARIANNA WYATT ET AL. V. USA; CV 23-00065 LEK-KJM; ORDER DENYING
PLAINTIFFS' OBJECTION TO [DKT. 138] MAGISTRATE JUDGE'S ORDER
DENYING EMERGENCY MOTION TO EXTEND THE SCHEDULE; AND ADOPTING
THE MAGISTRATE JUDGE'S ORDER DENYING PLAINTIFFS' EMERGENCY
MOTION TO EXTEND THE SCHEDULE**