GALIHER DeROBERTIS & WAXMAN LLP

| | |
|---|---|
| L. RICHARD DeROBERTIS | 3179 |
| ILANA K. WAXMAN | 8733 |
| ALLISON M. AOKI | 6912 |
| ALYSSA R. SEGAWA | 9798 |
| CHRISTOPHER L. JOHNSON | 11389 |

820 Mililani Street, Suite 505
Honolulu, Hawai'i 96813
Telephone: (808) 597-1400
Facsimile: (808) 591-2608
E-mail:   alyssa.segawa@galiherlaw.com

NIDEL & NACE, P.L.L.C.

| | |
|---|---|
| JONATHAN NACE | (*pro hac vice*) |
| CHRISTOPHER T. NIDEL | (*pro hac vice*) |
| ZACHARY A. KELSAY | (*pro hac vice*) |

One Church Street Suite 802
Rockville, Maryland 20850
Telephone: (202) 780-5153
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ARIANA WYATT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 1:23-cv-00065-LEK-KJM<br><br>PLAINTIFFS' RESPONSE TO [DKT. 174] DEFENDANT UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT; DECLARATION OF COUNSEL; EXHIBITS "1" – "7"; CERTIFICATE OF SERVICE<br><br><u>H</u>earing:<br>Date:    February 10, 2026<br>Time:   11:00 a.m.<br>Judge:  The Hon. Leslie E. Kobayashi |



Trial Date: July 7, 2026
Judge: Judge Leslie E. Kobayashi

PLAINTIFFS' RESPONSE TO [DKT. 174] DEFENDANT
UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT

I.  INTRODUCTION

Plaintiffs submit this opposition to the United States' Motion for Partial Summary Judgment ("Motion"). Plaintiffs do not dispute the general proposition that expert testimony is ordinarily required to establish medical causation and damages in a toxic-exposure case under Hawai'i law. Plaintiffs' inability to present expert testimony at this juncture, however, is not the result of evidentiary deficiency on the merits, but rather the consequence of the Court's prior orders denying Plaintiffs' request for an extension of expert disclosure deadlines.

On January 5, 2026, the District Court adopted the Magistrate's Order denying an extension of time. Doc. 181. Absent reversal by the Ninth Circuit (via post-verdict appeal or potential Petition for Writ of Mandamus pursuant to Federal Rule of Appellate Procedure 21), Plaintiffs have been denied that extension.

Additionally, Plaintiffs have filed a motion for leave to file late disclosed experts. *See* Doc. 175. Plaintiffs' Motion for Leave to Disclose Experts remains pending with this Court but is not yet ripe for adjudication. Plaintiffs provided a proposed Rule 26(a)(2) Disclosure, which identified three retained

experts and three hybrid experts pursuant to Rule 26(a)(2)(C). Doc. 175-3. Pending the results of that motion, a future objection to the District Court and potential Petition for Writ to the Ninth Circuit may proceed on that motion for leave.

Plaintiffs have now provided expert reports of Mr. Frank Anastasi, Dr. Robert Hale, and Dr. Robert Harrison pursuant to Rule 26(a)(2). Mr. Anastasi is a well-qualified hydrogeologist who opines in pertinent part:

> The November 2021 fuel release did not mark the beginning of petroleum contamination in the ground water pumped from the RHS well into the drinking water system and supplied to water users, including the plaintiffs. Significant volumes of the petroleum products released from the tank facility over time have infiltrated from the tanks/tunnels/pipelines into the subsurface natural environment beneath the fuel tank complex.
>
> \*\*\*
>
> Petroleum hydrocarbons have been present in ground water in the RHS well for an undetermined period of time since RH began operations, but at least as far back as approximately January 2013, when TPHd was detected according to DOH.
>
> \*\*\*
>
> It is highly likely that petroleum-hydrocarbon compounds contaminated the drinking water supply and distribution system before the gross contamination (including NAPL) that occurred following the November 2021 release (first reported being observed beginning on November 27, 2021).

*See* Ex. 1, pp. 22, 25, 28. Mr. Anastasi supplies expert testimony that the drinking water supply was contaminated with petroleum hydrocarbons since January 2013.

3

Dr. Robert Hale is a chemist who reviewed the relevant documents related to the contaminants of concern in this matter. He opines:

> 4. Fuels have periodically leaked from the Red Hill Fuel Storage Facility since its construction in the 1940s. Some were large spills (>20,000 gal). These were often poorly characterized or reported by the Navy.
>
> 5. Due to the construction of the Red Hill shaft well, its downgradient position relative to the 20 massive and aging fuel storage tanks, and the associated network of tunnels and pipes adjacent to the well, it is likely there was existing contamination of the Red Hill Shaft, i.e. drinking water source, prior to the major May and November 2021 spills.
>
> \*\*\*
>
> 8. TPH-d in the dissolved phase of Red Hill Shaft water is more likely than not dominated by trimethylbenzenes. A reasonable estimate of trimethylbenzenes in the shaft at least since June 2021, based on the results of Brewer and other data, is 50-150 ppb (μg/L).
>
> 9. These trimethylbenzenes travel with greater speed and persist in the environment, rending this a conservative estimate of the concentrations of them in the Red Hill Shaft.
>
> 10. The Red Hill shaft also contained polar metabolites (these likely included phenolics, ketones and organic acids). Exposure to these more likely than not presented additional toxicological implications to water users. Such chemicals structures have also been found to react with the chlorine added to disinfect drinking water, as was done by the Navy, forming disinfection byproducts that pose additional risks.

Ex. 2, p. 23. *See generally*, *id*.

Finally, Dr. Robert Harrison is a physician board certified in both occupational medicine and internal medicine. He has provided a report for Ms. Wilson and separately for Mrs. Wyatt and I.W. As to Ms. Wilson, he opines:

> It is my opinion to a reasonable degree of medical certainty that exposure to petroleum hydrocarbons, including trimethylbenzenes as well as other >C8 aromatics from June 2021 to November 2021, is capable of causing headaches and vertigo and this exposure is more likely than not the cause of these conditions that continue today.

Ex. 3, p. 7. As to the Wyatt's claim, he states:

> It is my opinion to a reasonable degree of medical certainty that chronic exposure to petroleum hydrocarbons, including trimethylbenzenes (1,2,3-, 1,3,5- and 1,2,4-) as well as other >C8 aromatics from June 2021 to November 2021, is capable of causing Ms. Wyatt's headaches, and this exposure is more likely than not the cause of her headache condition that continues today.

Ex. 4, p. 9. As to I.W., he states that

> There are well established links in the medical and scientific literature between chemical exposure to endocrine disrupting chemicals and thyroid disease. There are more limited studies on the link between environmental exposures and autoimmune thyroiditis.

*Id*. Those specific chemicals cannot be identified because of the pending motion for sanctions.

Additionally, Dr. Vaphiades who is listed on Plaintiffs' Rule 26(a)(2) disclosures pursuant to Rule 26(a)(2)(C) is a treating physician for Ariana Wyatt. In

5

his deposition, which Defendant USA attended and examined the witness, he testified:

> Q. And so is it your opinion within a reasonable degree of certainty as her treating physician that jet fuel exposure is a contributing factor to her vision complaints that you've seen her for?
>
> MS. SILVERSTEIN: Objection.
>
> **A. So given everything that – over the past, you know, three years and everything that we did, that's certainly at the top of my differential diagnosis.**
>
> BY MR. NACE:
>
> Q. And that means it's -- it's – as of today anyways, it's -- that's your – more likely than not, that is the cause of her complaints; correct?
>
> **A. Yeah. Yes.**

Ex. 5, pp. 104:12-105:2; *see generally id*. pp. 99:20-115:20 (explaining opinions that Ms. Wyatt has optic neuropathy caused by exposure to toxic jet fuel and needs ongoing medical care).

Similarly, Dr. Marc Guerra is listed to offer opinions he offered in his deposition. He is a treating physician for Meredith Wilson and testified:

> Q. And you were asked by counsel about whether you had opinions about the cause of any of Ms. Wilson's symptoms, and you identified a handful of those, and I just want to go through those. Is it, I believe they were vestibular disorder, headaches, mood disorder, fatigue, malaise, and balance or imbalance issues. Did you reach, sorry, is it your opinion to a

6

>           reasonable degree of medical or scientific certainty
>           that Ms. Wilson has suffered each of these as a
>           result of her exposure to jet fuel?
>
> **A.**    **Yes.**
>
> Q.        Did you form these opinions in the course of your
>           treatment for Ms. Wilson?
>
> **A.**    **Yes.**

Ex. 6, pp. 74:22-75:9; *see also id*, pp. 72:6-78:3 (explaining opinions held to a reasonable degree of medical certainty and methodology for forming them).

Finally, Plaintiffs listed Dr. Roger Brewer to testify to opines formed during the scope of his employment and offered to a reasonable degree of certainty in his deposition. Dr. Brewer is an employee of the Hawaii Department of Health who performed an exposure assessment of the November 2021. Ex. 7, pp. 16:24-18:1; 20:18-21:18. He formed an opinion to a reasonable degree of certainty during the course of and for the purpose of his employment that people living on base were exposed to benzene, toluene, ethylbenzene, xylene, and naphthalenes, 1 methyl naphthalene and 2 methyl-naphthalene, and the anti-freeze additive DiEGME. *Id*. p. 149:6-25. And he formed an opinion to a reasonable degree of certainty during the course of and for the purpose of his employment that people living on base were exposed to other petroleum hydrocarbons in the jet fuel. *Id*. p. 150:2-9.

Next, Plaintiffs' pending Motion for Sanctions of which the Magistrate heard Oral Argument on January 7, 2026 (two days before the deadline for this

7

response) has not been decided. *See* Doc. 148. Plaintiffs' Motion for Sanctions asks the Court to "Issue an adverse inference instruction that contaminants released in May and November of 2021 were capable of causing and did in fact cause Plaintiffs' injuries." Doc. 148, p. 2.

As set forth in Plaintiffs' prior motions and objections, Plaintiffs' lead causation expert was rendered unable to complete his report due to serious health complications. Plaintiffs promptly sought a continuance, acted diligently in retaining substitute experts, and have now substantially completed expert reports addressing general causation, specific causation, and medical monitoring. ECF No. 175.

II.     LEGAL STANDARD

"'Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact.'" *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (citing *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). "[W]hat is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.'" *Id*. p. 441 (quoting *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015)) (internal quotation marks omitted in original); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505,

91 L. Ed. 2d 202 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.")).

III.     ARGUMENT

    A.  Plaintiffs' Pending Motions are Dispositive of the Defendants' Motion for Partial Summary Judgment

Defendant USA's motion is predicated on the Court declining to provide leave to supply expert testimony at this time.[1]  Otherwise the testimony of Mr. Anastasi, Dr. Hale and Dr. Harrison provide all the requisite elements of causation that USA asserts are lacking.  The testimony demonstrates that each of the Plaintiffs was exposed to chemicals capable of causing the complained of injuries and that it more likely than not did cause those injuries.

Additionally, the motion for sanctions allows the factfinder to determine that Plaintiffs' injuries could be caused by contaminants that were destroyed and more likely than not were caused by those contaminants.  Therefore, even without granting leave to provide expert disclosures, Plaintiffs' claims can proceed if the Court permits an adverse inference due to the destruction of evidence.

---

[1] At the time of the filing of Defendant's Motion for Partial Summary Judgment, Plaintiffs' Objection to the Order denying an extension of time was pending.  That has now been resolved, subject to future litigation in the Ninth Circuit.  But, the motion for leave to permit expert disclosures is pending, as is the Plaintiffs' Motion for Sanctions.

9

### B. Without Relief, Defendant USA is Entitled to Partial Summary Judgment as Requested in Its Motion

In response to Plaintiffs' many efforts to extend the scheduling order, including the Objection to the District Court, Defendant USA argued that the relief sought was a nondispositive matter because a dispositive matter "is 'a pretrial matter not dispositive of a party's claim or defense.'" Doc. 170, p. 10 (quoting *Suzuki v. Helicopter Consultants of Maui, Inc.*, No. CV 13-00575 JMS/KJM, 2016 WL 3753079, at *5 (D. Haw. July 8, 2016)). Now they argue "[w]ithout any expert testimony, Plaintiffs cannot carry their burden at summary judgment for their Medical Monitoring and Medical Injury Claims…" Doc. 174-1, p. 9.

Under the current circumstances, the Motion is procedurally dispositive only because Plaintiffs are currently precluded from disclosing expert testimony, not because Plaintiffs lack evidence capable of creating a genuine dispute of material fact. Granting partial summary judgment now would therefore operate as a *de facto* merits determination flowing directly from the denial of relief from the Scheduling Order, an issue that is still pending before the Court.

Accordingly, Plaintiffs respectfully acknowledge that, absent relief permitting expert disclosures, the United States' Motion cannot be disputed. Plaintiffs submit this opposition to preserve their position that summary judgment under these circumstances rests on procedural grounds rather than substantive insufficiency, and to respectfully request that the Court consider the Motion in light

of the unresolved objections and the extraordinary prejudice resulting from the denial of expert relief. *See, e.g.*, *OFS Fitel, LLC v. Epstein, Becker & Green, PC*, 549 F.3d 1344, 1357 (11th Cir. 2008) (finding District Court sanction order excluding expert testimony in malpractice case was "dispositive," because "it foreclosed Fitel from presenting the expert testimony required to prove...its claims"); *Martinez v. Univ. of San Diego*, 2024 WL 479970, at *5–6 (S.D. Cal. Feb. 7, 2024) ("the practical effect of the striking [expert's] damages calculation would amount to the dismissal of Plaintiffs' … claims"); *see also Yang v. Brown Univ.*, 149 F.R.D. 440, 442–43 (D.R.I. 1993) ("the Magistrate's order [precluding expert's testimony] crosses the line from non-dispositive to dispositive decision-making. His ruling vitiates plaintiff's case. It is tantamount to an involuntary dismissal.").

        C.    Plaintiffs Are Not Seeking "Medical Monitoring" and USA is Entitled to Summary Judgment

Plaintiffs note that they are not seeking "medical monitoring" as that claim is defined, and so they do not oppose summary judgment specifically as to medical monitoring.[2] Medical monitoring is a compensable item of damages when **absent present injury** but based upon exposure to chemicals there is a relative increase in the chance of onset of disease in the exposed plaintiff, and there is value

---

[2] This basis for summary judgment was not raised in a meet and confer prior to USA's motion for summary judgment. Plaintiffs' counsel would have conceded there is no medical monitoring claim for the reasons stated in this response if it was requested.

11

to early diagnosis. *See In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 850 (3d Cir. 1990) ("courts have begun to recognize claims like medical monitoring, which can allow plaintiffs some relief even absent present manifestations of physical injury."); *see also e.g.*, *Ayers v. Jackson Twp.*, 106 N.J. 557, 525 A.2d 287 (1987); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 863 P.2d 795 (1993)). Plaintiffs all seek damages for damages from existing injury and are not pursuing claims for medical monitoring in the absence of present injury. Plaintiffs do seek damages for permanent injury and future medical care, but that its not medical monitoring. Instead, Plaintiffs seek damages for the permanence of the existing injury based on the evidence provided. *Larsen v. Pacesetter Sys., Inc.*, 74 Haw. 1, 44, 837 P.2d 1273, 1295, *amended* (Oct. 22, 1992), *amended on reh'g in part*, 74 Haw. 650, 843 P.2d 144 (1992) ("expert testimony is not necessary where an injury is objective in nature and it is plainly apparent from the injury itself that the harm is permanent or that the injured person will necessarily undergo pain and suffering in the future.")

Therefore, Plaintiffs do not oppose summary judgment for medical monitoring of injuries that are presently absent.

IV.     CONCLUSION

Plaintiffs hereby oppose the Motion for Partial Summary Judgment. Plaintiffs' motion for leave to disclose experts and motion for sanctions are dispositive of the Defendants' motion for summary judgment. For the reasons stated,

if the Court grants either motion, all or part of Defendant's motion for partial summary judgment must be denied.

                                    Respectfully submitted,

                                    /s/ Alyssa R. Segawa
                                  L. RICHARD DeROBERTIS
                                  ILANA K. WAXMAN
                                  ALYSSA R. SEGAWA

                                  /s/ Jonathan B. Nace
                                  JONATHAN B. NACE (*pro hac vice*)
                                  CHRISTOPHER T. NIDEL (*pro hac vice*)
                                  ZACHARY A. KELSAY (*pro hac vice*)

                                  Counsel for Plaintiffs