IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ARIANA WYATT, ET AL., | ) | CIVIL NO. 23-00065 LEK-KJM |
| | ) | |
| Plaintiffs, | ) | ORDER DENYING PLAINTIFFS' |
| | ) | MOTION FOR SANCTIONS FOR |
| vs. | ) | SPOLIATION OF EVIDENCE |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

ORDER DENYING PLAINTIFFS' MOTION FOR
SANCTIONS FOR SPOLIATION OF EVIDENCE

On September 16, 2025, Plaintiffs Ariana Wyatt, individually and as next

friend to her minor child, I.W., and Meredith Wilson (collectively, "Plaintiffs")

filed a Motion for Sanctions for Spoliation of Evidence ("Motion").  ECF No. 148.

On December 1, 2025, Defendant United States of America ("Defendant") filed an

Opposition to the Motion.  ECF No. 171.  On December 8, 2025, Plaintiffs filed a

Reply.  ECF No. 173.

On January 7, 2026, the Court held a hearing on the Motion.  ECF No. 183.

Alyssa R. Segawa, Esq., Jonathan B. Nace, Esq., and Christopher T. Nidel, Esq.,

appeared on behalf of Plaintiffs.  Eric A. Rey, Esq., appeared on behalf of

Defendant.  At the hearing, Plaintiffs' counsel displayed demonstratives and

provided a copy of them to the Court.  Pursuant to the Court's request, Plaintiffs

filed the demonstratives presented at the hearing.  ECF No. 185.

After carefully considering the memoranda, oral arguments, applicable law,

and record in this case, the Court DENIES the Motion for the reasons set forth

below.

## BACKGROUND

The Court and the parties are familiar with the facts and issues in this case.

The Court therefore will only recite those relevant to deciding the Motion.

This matter is one of several cases filed in this district in which plaintiffs

assert claims against the United States arising from the 2021 releases of jet fuel at

the United States Navy's ("Navy") Red Hill Bulk Fuel Storage Facility ("Red

Hill").  On February 2, 2023, Plaintiffs filed their Complaint.  ECF No. 1.  The

operative pleading is the Amended Complaint, which asserts negligence, nuisance,

and trespass claims related to the fuel releases in May 2021 and November 2021.

ECF No. 44.  The operative scheduling order is the Stipulated Sixth Amended Rule

16 Scheduling Order.  ECF No. 110.  The current trial date is July 7, 2026.  *Id.*

The Motion centers on a dispute regarding the residual fuel that remained in

the Red Hill Aqueous Film-Forming Foam ("AFFF") Retention Line after the

November 2021 fuel release.  Documents produced by Defendant to Plaintiffs in

August 2023 indicated that as of January 22, 2022, there was still residual fuel in

the AFFF Retention Line.  ECF No. 171-1 at 4 ¶¶ 16–17; ECF No. 171-7; ECF No.

171-8 at 1.  Representatives from the Navy met on January 7, 2022, to "discuss the

importance of completely drying the retention line."  ECF No. 171-8 at 1.  During

this meeting, all representatives agreed on the following:

> Removing all liquid from the retention line is the highest priority and
> it might entail extreme measures such as drilling or otherwise
> damaging the retention line.  Further using additional water to flush
> the retention line in its current state poses a high risk of catastrophic
> failure and is not recommended at this time, especially since less
> drastic means for emptying the retention line are available.

*Id.* at 2.

In March 2022, the Secretary of Defense issued a memorandum that directed

the Navy to "take all steps necessary to defuel and permanently close [Red Hill.]"

ECF No. 171-1 at 4 ¶¶ 18–19; ECF No. 171-9 at 1.  The memorandum also stated

that the "plan of action shall require that defueling operations commence as soon

as practicable after the facility is deemed safe for defueling and target the

completion of that defueling within 12 months."  ECF No. 171-9 at 1.

In email correspondence from June 2022, Navy representatives mentioned

that "there is residual fuel in the Adit 3 line remaining from Nov release."  ECF

No. 171-12 at 1.

During August and September of 2023, a Navy contractor, Dawson, flushed

portions of the Retention Line.  ECF No. 148-3 at 92:19–93:2, 93:25–94:18.

Dawson collected the material into drums.  *Id.* at 94:15–20, 95:6–9.  Another

contractor, AECOM, then took samples from the drums for the limited purpose of

mass balancing of the fuel release and not for quantitative analysis of the specific

chemicals present in the samples. *Id.* at 94:19–21, 132:4–24.

On December 1, 2023, Defendant produced to Plaintiffs documents stating:

"AFFF retention line won't be used anymore. Red Hill OIC drained the AFFF

retention line of fuel; however, some residual fuel potentially remains. Residual

fuel will be removed via the AFFF Repair contract." ECF No. 171-1 at 5 ¶¶ 21–

22; ECF No. 171-10; ECF No. 171-11 at 2–3.

On January 31, 2024, the United States Environmental Protection Agency's

("EPA") Red Hill environmental team learned that there was still some fuel in the

AFFF Retention Line. ECF No. 148-4 at 2. During a meeting on February 2,

2024, the EPA requested that the Navy collect and preserve fuel samples from the

AFFF Retention Line. *Id.* On February 6, 2024, the EPA sent a letter clarifying

the parameters of its request. ECF No. 148-4. Therein, the EPA stated:

> The fuel in this AFFF retention line is very likely representative of the
> November 2021 release, and we believe it is important to fully
> characterize.
>
> The Navy plans to begin cleaning the AFFF retention line later this
> week. We request that the Navy collect aliquots of the fuel prior to
> cleaning the line, and have a lab hold the aliquots for future analyses.
> The aliquots could later be used to evaluate risk from potentially
> unknown components of the release, including petroleum-related
> constituents, fuel additives, cleaning products, per- and
> polyfluoroalkyl substances (PFAS), and/or other unidentified
> chemicals.

*Id.* at 2.  The EPA also provided specific protocol for collection and storage of the samples.  *Id.* at 2–3.  The EPA stated that "[t]he goal is to best preserve the contents in the state they were in when they were collected from the source.  The recommended sample bottles and collection methods should be sufficient to allow for a variety of analytical methods and to prevent cross contamination."  *Id.* at 3.  Email correspondence from February 6 through 8, 2024, indicates that the Navy began working on the EPA's request.  ECF Nos. 148-5, 148-6, 148-7.

Between February 2 and 9, 2024, in response to the EPA's request, the Navy's contractor, AECOM, collected samples of residual fuel remaining in the AFFF Retention Line ("Samples").  *See* ECF No. 148-18 at 2.  Samples were collected both from drums and directly from the Retention Line.  *Id.*; ECF No. 171-24 at 150, 238.  This was because, before the Navy received the EPA's requested protocol, some of the residual fuel already had been drained into drums.  ECF No. 148-18 at 2; ECF No. 171-24 at 115:4–8.  Thereafter, the Navy collected seven samples directly from the Retention Line.  ECF No. 148-18 at 2; *id.* at 13 (seven rows of samples were collected from the AFFF Retention Line as it drained by gravity); ECF No. 171-24 at 150:13–21.

On February 9, 2024, the Navy sent a letter to the EPA confirming that it collected the samples.  ECF No. 148-18.  Between March 5 and March 8, 2024, the

EPA conducted an inspection of Red Hill to evaluate the status of the remaining

fuel in the facility.  ECF No. 148-13 at 2.

In April 2024, the bellwether trial in *Feindt v. United States* began.  *Feindt*

*v. United States*, CIV. NO. 22-00397 LEK-KJM, 2025 WL 2254119, at \*1 (D.

Haw. Aug. 7, 2025).

On June 10, 2024, the EPA requested, among other things, testing of the

samples collected in February 2024 from the AFFF Retention Line for per- and

polyfluoroalkyl substances ("PFAS").  ECF No. 148-14 at 2.  In response, on June

21, 2024, Karnig Ohannessian of the Navy informed the EPA that it could not

agree to conduct additional testing:

> Regarding the EPA request for PFAS analysis of samples collected in
> February 2024 from the retention line and collection drums that held
> fluids from the November 2021 release, Navy is unable to agree with
> conducting the requested evaluation.  There are a number of potential
> pathways for introduction of other materials into the fluids, as
> acknowledged in your letter.  Confounding factors include
> degradation of the polyvinyl chloride pipe from fuel constituents
> with the passage of over 2 years, and the means of extraction of fluids
> from the piping that was conducted for the purposes of defueling,
> cleaning and disposal of materials as opposed to sample collection
> (e.g., fluid pump, funnel/drain tubing, and drum consolidation).  The
> fluids from the collection drums and retention line were collected after
> decommissioning and cleaning procedures had commenced, resulting
> in numerous points for potential introduction of materials that were
> not part of the original fluid.  As a result, we have little confidence
> that the collected fluids represent the November 2021 release.  Navy
> believes that the environmental investigation, including the
> groundwater and source water sampling that we are agreeing to
> conduct, is the best instrument for evaluation of the release and risk to
> human health and the environment.

ECF No. 148-14 ("06/21/2024 Letter") at 3.

Plaintiffs assert that they discovered the existence of the Samples in

December 2024 through their own efforts.  ECF No. 148-1 at 13 (citing ECF No.

148-2 at 1 ¶ 2).  On December 4, 2025, Plaintiffs' counsel contacted Defendant's

counsel about the Samples.  ECF No. 148-2 at 1 ¶ 3.  On January 2, 2025,

Defendant's counsel provided a substantive response, confirming that the Samples

still existed and providing an inventory of the Samples.  ECF No. 148-16; ECF No.

171-1 at 7 ¶¶ 33–34; ECF No. 171-19.  Defendant asserts that it invited Plaintiffs

to analyze the Samples, but Plaintiffs have not done so yet.  ECF No. 171 at 10

(citing ECF No. 148-16 at 2; ECF No. 171-1 at 7 ¶ 36).

In response to Plaintiffs' questions regarding the Samples, Defendant

provided further information regarding:  (1) the Bates numbers in its November

2024 production corresponding to the field notes, daily reports, and analytical

reports for the Samples (ECF No. 171-1 at 7 ¶ 35; ECF No. 171-20); (2) how the

Samples have been preserved (ECF No. 171-1 at 7 ¶¶ 36–37); and (3) the amount

of fluid remaining in each container (*id.* at 8 ¶ 38; ECF No. 171-21).

On May 7, 2025, the district court in *Feindt* issued its Preliminary Findings

of Fact and Conclusions of Law.  *Feindt v. United States*, CIV. NO. 22-00397

LEK-KJM, 2025 WL 1348465, at *1 (D. Haw. May 7, 2025).  On August 7, 2025,

the district court issued its Findings of Fact and Conclusions of Law. *Feindt*, 2025 WL 2254119.

On September 16, 2025, Plaintiffs filed the instant Motion. The Court initially set a hearing on the Motion for December 3, 2025. ECF No. 149. Pursuant to Plaintiffs' requests, the Court continued the hearing from December 3, 2025, to January 7, 2026. ECF Nos. 151, 163.

## DISCUSSION

Plaintiffs allege that Defendant failed to disclose relevant material in its control regarding the existence of the residual fuel and the Samples. In addition, Plaintiffs allege that Defendant "contaminated the [Samples] during its collection and storage," thereby making analysis of them unreliable. ECF No. 148-1 at 17. Plaintiffs argue that "[b]y contaminating and rendering any analysis unreliable, [Defendant] destroyed and/or materially altered the only physical evidence capable of identifying the specific chemicals released in May and November 2021 that ultimately poisoned the community." *Id.* Plaintiffs also argue that such evidence is essential to proving Plaintiffs' claims for serious, long-term injuries. *See id.* at 6, 19. Plaintiffs request sanctions based on Defendant's alleged spoliation of the Samples pursuant to Federal Rule of Civil Procedure 37(b) and (c) and the Court's inherent authority.

I.      Sanctions Under Rule 37(b) and (c)

Rule 37(c) provides that if a party fails to provide information as required by

Federal Rule of Civil Procedure 26(a) or (e), and unless the failure was

substantially justified or is harmless, the Court may impose sanctions, such as

those provided in Rule 37(b)(2)(A)(i) to (vi).  Fed. R. Civ. P. 37(c)(1)(A)–(C).

Rule 37(c) applies only to violations of Rule 26(a) (requiring pretrial disclosures)

and (e) (requiring supplemental disclosures).  Because Plaintiffs do not argue that

Defendant violated Rule 26(a) or (e), the Court denies Plaintiffs' request for

spoliation sanctions under Rule 37(b) and (c).

II.     Sanctions Under the Court's Inherent Authority

When Rule 37 does not govern the alleged spoliation of evidence, courts rely

on their inherent authority.  *See Maui Elec. Co. v. Chromalloy Gas Turbine, LLC*,

CIV NO. 12-00486 SOM-BMK, 2015 WL 12747945, at *3 (D. Haw. May 29,

2015) ("The Court has two sources of authority to issue sanctions, Federal Rule of

Civil Procedure 37 and its inherent authority . . . ." (citing *Leon v. IDX Systems

Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329

(9th Cir. 1993)).

"Spoliation refers to the destruction or material alteration of evidence or to

the failure to preserve property for another's use as evidence in pending or

reasonably foreseeable litigation." *Id.* (quoting *Silvestri v. General Motors Corp.*,

271 F.3d 583, 590 (4th Cir. 2001)).  "The bare fact that evidence has been altered

or destroyed 'does not necessarily mean that the party has engaged in sanction-

worthy spoliation.'"  *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D.

Cal. 2013) (citation omitted).  "Although no showing of bad faith is required,

sanctions are not warranted unless the non-moving party destroyed the evidence

despite knowledge of its relevance and thereby prejudiced the movant."  *Maui*

*Elec.*, 2015 WL 12747945 at *2 (citing *Durham v. Cnty. of Maui*, Civ. No.

08-00342 JMS-LEK, 2010 WL 3528991, at *4–5 (D. Haw. Sept. 10, 2010)).

Courts in the Ninth Circuit employ a three-part test in determining whether

sanctions based on spoliation are warranted:

> (1) that the party having control over the evidence had an obligation to
> preserve it at the time it was destroyed; (2) that the records were
> destroyed with a "culpable state of mind"[;] and (3) that the destroyed
> evidence was "relevant" to the party's claim or defense such that a
> reasonable trier of fact could find that it would support that claim or
> defense.

*Id.* at *3 (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y.

2003)).  "When evidence is destroyed in bad faith, i.e. intentionally or willfully,

that fact alone is sufficient to demonstrate relevance; however, when the

destruction is negligent, relevance must be proven by the party seeking the

sanctions."  *Id.* (citing *Zubulake*, 220 F.R.D. at 220).  While this test expressly

references "destroy[ing]" evidence, it also applies when a party has significantly

altered or failed to preserve evidence.  *MS Amlin Marine NV v. Delta Marine*

*Indus. Inc.*, 348 F.R.D. 658, 680 (W.D. Wash. 2025) (citing *Reinsdorf*, 296 F.R.D. at 626) (other citation omitted), *reconsideration denied*, 2025 WL 388926 (W.D. Wash. Feb. 4, 2025).

"The party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim." *Reinsdorf*, 296 F.R.D. at 627 (citation omitted). "Courts in the Ninth Circuit have indicated that a preponderance of the evidence standard of proof is applicable to spoliation sanctions." *Feindt v. United States*, Civil No. 22-00397 LEK-KJM, 2023 WL 8650190, at *3 (D. Haw. Dec. 14, 2023) (citing cases). "Under the preponderance of the evidence standard, the relevant facts must be shown to be more likely true than not." *Id.* (citing *United States v. Montano*, 250 F.3d 709, 713 (9th Cir. 2001)). "[T]he determination whether to award sanctions for spoliation of evidence is a highly fact-specific inquiry." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 294 (S.D.N.Y. 2011).

The Court finds that Plaintiffs have not proven all three elements to warrant spoliation sanctions.

As to the first factor, the Samples still exist and Plaintiffs have not tested the Samples. Plaintiffs, however, argue that Defendant contaminated the Samples and any testing would be unreliable due to exceeding the preservation requirements. Plaintiffs argue that this is tantamount to spoliation of evidence

because Defendant significantly altered evidence and failed to preserve evidence for Plaintiffs' use in this case.

For purposes of deciding the Motion, the Court finds that Plaintiffs have not provided enough credible evidence for the Court to conclude that Defendant contaminated the Samples and that the Samples cannot be used for reliable testing. Plaintiffs' argument regarding contamination and unreliability, which was not supported by expert findings, is not enough to prove spoliation. *See U.S. E.E.O.C. v. Wedco, Inc.*, No. 3:12-cv-00523-RCJ-VPC, 2014 WL 4635678, at *4 (D. Nev. Sept. 15, 2014) ("A party moving for spoliation sanctions is not entitled to have the Court agree with broad inferences of spoliation based on nothing more than speculation. Even the low-threshold preponderance of the evidence standard still requires sufficient objective evidence to allow the fact-finder to conclude that the existence of a fact is more probable than its nonexistence." (citing *Kennedy v. S. Cal. Edison Co.,* 268 F.3d 763, 770 (9th Cir. 2001)); *see also Nida v. Allcom*, Case No. 8:17-cv-02162-JLS (JDEx), 2020 WL 2405251 at *3 (C.D. Cal. Mar. 11, 2020) ("A claim of spoliation must rest on more than speculation." (citing cases, including *Reinsdorf*, 296 F.R.D. at 631)).

The Court also notes that the Navy's statements to the EPA in June 2024 are not sufficient to prove by a preponderance of the evidence that Defendant contaminated the Samples or that the Samples cannot be used for reliable analysis.

In the 06/21/2024 Letter, the Navy stated that it has "little confidence" that the Samples collected from the AFFF Retention Line and the collection drums "represent the November 2021 release." ECF No. 148-14 at 3. The Navy explained that the Samples "were collected after decommissioning and cleaning procedures had commenced, resulting in numerous points for potential introduction of materials that were not part of the original fluid." *Id.*

The Court finds it reasonable that the Navy was already taking affirmative steps by February 2024 to defuel and close Red Hill, as directed by the Secretary of Defense in March 2022. ECF No. 171-9. The Court thus does not see how it was possible in February 2024 to obtain "uncontaminated" samples that represented the November 2021 fuel release, as requested by the EPA. And even if it were possible, Plaintiffs present no credible evidence to prove this possibility for purposes of deciding this Motion.

Because the Samples still exist, and Plaintiffs do not offer sufficient credible evidence to prove that Defendant contaminated the Samples or that testing of the Samples would be unreliable, the Court finds that Defendant fulfilled its duty to preserve the Samples.

For purposes of completeness, even if Plaintiffs could establish the first element, Plaintiffs do not establish that Defendant destroyed, altered, or failed to preserve the Samples with a "culpable state of mind" to satisfy the second element.

Courts in the Ninth Circuit have instructed that a "culpable state of mind" includes

negligence. *Reinsdorf*, 296 F.R.D. at 627–28 (citing cases).  There is no evidence

in the record demonstrating that Defendant caused the Samples to be destroyed or

altered, or that Defendant failed to preserve the evidence, in bad faith or even

negligently.  The Samples are still available.  Defendant has offered Plaintiffs the

opportunity to conduct testing of the Samples, which Plaintiffs have not yet

initiated.

In addition, the Court is not convinced that Defendant concealed the fact that

the Retention Line contained residual fuel.  On August 16, 2023, Defendant

produced documents noting that "[t]here is still residual fuel in the 14" Red Hill

AFFF Retention line near Adit 3."  ECF No. 171-8 at 1; ECF No. 171-1 at 4 ¶ 17.

On December 1, 2023, Defendant produced documents noting "that there is

residual fuel in the Adit 3 line remaining from Nov release."  ECF No. 171-12 at 1;

*see also* ECF No. 171-11 at 2–3 ("AFFF retention line won't be used anymore.

Red Hill OIC drained the AFFF retention line of fuel; however, some residual fuel

potentially remains.  Residual fuel will be removed via the AFFF Repair

contract."); ECF No. 171-1 at 5 ¶¶ 22–23.  On November 15, 2024, Defendant

produced field notes and analytical reports related to the Samples.  ECF No. 171-1

at 6–7 ¶¶ 31–32; ECF No. 171-17; ECF No. 171-18.  On March 17, 2025,

Defendant produced additional documents regarding residual fuel in the Retention

Line and identified Michael Klapec and Commander Benjamin Dunn as custodians

on this topic.  ECF No. 171-1 at 8 ¶ 39; ECF No. 171-22 at 5.  Plaintiffs did not

select either as a document custodian.  ECF No. 171-1 at 8 ¶ 40.  When Mr. Klapec

was later deposed as the Navy's Rule 30(b)(6) designee, Defendant produced the

portions of his custodial file that he reviewed to prepare for the deposition.

*Id.* ¶¶ 41–42.  Based on this record, Defendant's early document productions noted

the possibility that the Retention Line contained residual fuel.  Upon receiving this

information, Plaintiffs could have conducted discovery to explore this issue.

On this record, the Court cannot find that Plaintiffs have proven by a

preponderance of the evidence that Defendant destroyed, altered, or failed to

preserve the Samples with a "culpable state of mind."

Even if Plaintiffs could prove the first two elements—that Defendant was

obligated to preserve the Samples and Defendant destroyed, altered, or failed to

preserve the Samples with a "culpable state of mind"—Plaintiffs do not establish

that the Samples were "relevant" for spoliation purposes.  "Courts generally agree

that 'relevance' for spoliation purposes 'is a two-pronged finding of relevance and

prejudice' because 'for the court to issue sanctions, the absence of the evidence

must be prejudicial to the party alleging spoliation of evidence.'"  *Reinsdorf*, 296

F.R.D. at 627 (citations omitted).

Plaintiffs do not establish by a preponderance of the evidence the relevance

of additional testing of the Samples to warrant spoliation sanctions. *See Cedar*

*Petrochemicals*, 769 F. Supp. 2d at 293 ("Too, the question here is not whether the

*samples themselves* are relevant to the case, but rather whether the *further testing*

Dongbu would perform on the now-unavailable samples would be relevant."). The

record shows that because the Navy was already in the process of defueling Red

Hill, the Samples collected in February 2024 were already not indicative of the fuel

released in November 2021.

In addition, there is other evidence available to Plaintiffs that reflects the

extensive testing of the fuel spilled in November 2021. *See id.* (citing *Golia v.*

*Leslie Fay Co.,* No. 01 Civ. 1111(GEL), 2003 WL 21878788, at *10 (S.D.N.Y.

Aug. 7, 2003) (refusing to award harsh sanctions because "defendant's misconduct

has not robbed plaintiffs of the only evidence on which they could base their

case")). For example, on April 12, 2023, Defendant provided Plaintiffs an analysis

of the fuel released from the Retention Line that flowed into a sump. ECF No.

171-1 at 3 ¶¶ 10–11; ECF No. 171-4. On July 7, 2023, the Defendant produced

detailed analytical results of "fresh" JP-5—the fuel spilled in November 2021—

collected from a tank at Red Hill. ECF No. 171-1 at 3–4 ¶¶ 13–15; ECF No.

171-6. Between December 2023 and August 2024, Defendant produced numerous

additional documents detailing these analyses in response to additional discovery

requests from Plaintiffs.  ECF No. 171 at 12 (citing ECF Nos. 171-13, 171-16).

Plaintiffs' contention that there is no evidence of the chemicals that were actually

contained in the fuel released in November 2021 beyond TPHs (total petroleum

hydrocarbons) and BTEX (benzene, toluene, ethylbenzene, and xylene), which

Plaintiffs argue is critical to their claims for long-term injuries, is mistaken.

Plaintiffs do not clearly argue in their written briefs that the prior testing is

unreliable.  At the hearing on the Motion, however, Plaintiffs' counsel argued

various claimed issues in the analysis of the sump samples.  *See, e.g.*, ECF No.

185-1 at 12 (referencing ECF No. 171-4 at 7) ("Note that there are very few target

compound above C12 in the PIANO analysis . . . .  The 143 target compounds are

just few of the many compounds in the fuels."); ECF No. 185-1 at 13 (flawed

detection limits); *id.* at 14–17 (flawed lab analysis); *id.* at 18 (analytical flaws).

Plaintiffs' counsel also highlighted issues with the "fresh" fuel sample.  *Id.* at 24.

Because Plaintiffs' counsel made these arguments for the first time at the hearing

on the Motion, and Defendant did not have a meaningful opportunity to respond in

writing, the Court disregards these arguments.  *See Gao v. Haw. Dep't of Atty.*

*Gen.*, No. CV 09-00478 DAE-BMK, 2010 WL 99355, at *9 n.5 (D. Haw. Jan. 12,

2010) ("The Court disregards Plaintiff's arguments raised for the first time at the

hearing."), *aff'd sub nom. Gao v. Hawaii*, 424 F. App'x 641 (9th Cir. 2011).

Notwithstanding, even if the Court considered Plaintiffs' counsel's belated

oral argument, the Court would still find counsel's argument, which was not

supported by expert findings, insufficient to establish that the previous testing was

unreliable.

In addition, that Plaintiffs have not yet conducted their own testing of the

Samples calls into question the relevance of further testing to Plaintiffs' case.[1]

Plaintiffs also do not establish the requisite "prejudice" to warrant spoliation

sanctions.  The prejudice inquiry asks whether the non-moving party's actions

impaired the movant's "ability to go to trial or threatened to interfere with the

rightful decision of the case." *Reinsdorf*, 296 F.R.D. at 627 (quoting *Leon,* 464

F.3d at 959).  The record shows that there is evidence of the chemicals that were

actually contained in the fuel released in November 2021.  Such testing was

completed closer in time to the November 2021 fuel release than the testing that

could be completed on the Samples obtained in February 2024.  The district court

---

[1] At the hearing on the Motion, Plaintiffs explained that they have not conducted testing of the Samples due to, among other things, all of the purported contamination and reliability issues raised by the Navy's 30(b)(6) designees. Plaintiffs' counsel expressed concern that if the testing was unfavorable to Defendant, Defendant may argue that the Samples were not representative of the fuel spilled in November 2021.  *See* ECF No. 148-16 at 2 (in a letter to Plaintiffs dated January 2, 2025, Defendant reserving "any and all arguments with respect to these samples and any analysis thereof, including but not limited to their representativeness of the fuel spilled in November 2021").  Plaintiffs may wish to seek an evidentiary ruling regarding the use of any analysis of the Samples at trial.

in the *Feindt* bellwether trial found that Defendant had a duty to Plaintiffs and

breached that duty. *Feindt*, 2025 WL 2254119, at *3 ¶ 13. In light of all of the

available evidence and the district court's findings, this Court finds that

Defendant's actions or omissions with respect to the Samples do not impair or

interfere with Plaintiffs' ability to proceed to trial and obtain a rightful decision of

the case.

Although Defendant may not have been perfect in preserving the residual

fuel in the AFFF Retention Line or the Samples collected in February 2024,

Defendant's efforts to do so, in conjunction with its efforts to defuel and close Red

Hill to protect the community, were reasonable under the circumstances. *See*

*Townes ex rel. Est. of Townes v. Cove Haven, Inc.*, No. 00 CV 5603(RCC), 2003

WL 22861921, at *4 (S.D.N.Y. Dec. 2, 2003) ("A potential spoliator need do only

what is reasonable."); *see also Reinsdorf*, 296 F.R.D. at 626 ("The bare fact that

evidence has been altered or destroyed 'does not necessarily mean that the party

has engaged in sanction-worthy spoliation.'" (citation omitted)). Because

Plaintiffs fail to establish all of the elements of their spoliation claim, the Court

denies the Motion.

//

//

//

19

CONCLUSION

Based on the foregoing, the Court DENIES Plaintiffs' Motion for Sanctions

for Spoliation of Evidence (ECF No. 148).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 4, 2026.



Kenneth J. Mansfield
United States Magistrate Judge

*Wyatt, et al. v. United States*; Civil No. 23-00065 LEK-KJM; Order Denying Plaintiffs' Motion
for Sanctions for Spoliation of Evidence